And we move to the fourth case this morning, Day v. United States, third case. Good morning, Your Honor, and may it please the Court. My name is Caroline Flynn, and I represent the petitioner in this action, Mr. David Day. This Court granted a Certificate of Appealability on Mr. Day's claim that his retained trial counsel provided ineffective assistance when they persuaded him to reject a highly favorable plea offer in December 2014. Four days after rejecting that plea offer, after his counsel changed their advice and said that he'd be convicted, Mr. Day ended up pleading guilty anyway without any sentencing concessions in place. If he'd accepted that agreement instead, he'd likely be out of prison by now. The District Court dismissed Mr. Day's claim without even holding an evidentiary hearing. But the government has now conceded outright that the attorneys in question performed efficiently, and the government also does not defend the District Court's ruling on Strickland's prejudice prong, that Day couldn't show prejudice as a matter of law because the plea agreement was non-binding. But the government still offers two arguments for why this case should not proceed. First, that Schwartz and Criss's deficient performance was legally irrelevant because he earlier received competent advice about another plea offer months earlier. And second, that as a factual matter, Mr. Day suffered no prejudice because he wouldn't have taken the deal anyway. Because what? Because the government argues that he wouldn't have taken the deal had he been competently advised by Schwartz and Criss. Yes, he was competently advised in the first place. He first received competent advice about the first plea offer in June from his previous attorney. But then he received incompetent advice, and at that point he rejected the first plea offer. This wasn't a situation where he just received competent advice and then rejected the plea offer. He received mixed advice and then rejected it. But we're asking this court to focus on the second plea offer in December, at which point Schwartz and Criss were his only attorneys. Those are the attorneys the government has conceded performed efficiently at that point. Ms. Foster is no longer in the picture. She did not advise Mr. Day about that decision, and so at the point at which she was being asked to make a decision about whether to plead and accept that offer, he received only deficient performance from his attorneys. Well, the people they brought in, his father, first of all, brought his lawyer in and turned out didn't have any experience in criminal law, so they brought in Criss, is it? Yes, Your Honor. Okay, so the curious thing to me is they waited until he reached $30,000 before they did anything. I think that's sort of a problem for me. Am I correct in that? You are correct, Your Honor. After meeting with Mr. Day, they knew the point of that meeting was to give him advice about whether to take this offer on the table. They told him that he had a good defense, that what he was doing was not actually a crime. They said that the government's case was insubstantial, even though they hadn't reviewed any of the discovery. And then they took a down payment. Months passed, and then only once his father had paid their fee in full did they enter their appearances in the case and then ask for a continuance, telling the district court, we need this continuance because we still haven't reviewed any of the discovery in this case. We don't have the case files. We aren't ready to go to trial in 40 days. At that point, the continuance was denied, and the government re-offered the plea offer after Foster had withdrawn. They were the only attorneys, and Day was being asked at that point whether he wanted to take that plea offer rather than go to trial in 40 days. And he rejected that? And he rejected that on the record in front of the district court. And then four days after he rejected that plea, Your Honor, he ended up pleading guilty with no plea agreement. He entered an open plea. The government agreed to no sentencing concessions, and he ended up getting a sentence of 92 months when what he likely would have faced under the plea agreement was between 41 and 51 months. The next, you know, his co-defendant, the woman who he bought these Social Security numbers from, got 40 months as well. Were they all on the same court? I'm sorry? The same person, same judge? Yes. Well, she accepted a plea agreement, and that's why she was sentenced 40 months. So the government, you know, the government tries to argue that the second plea offer was not really a new choice for Mr. Day because the terms of the plea offers were the same. But, of course, at the time, the prosecution didn't see it that way because they did present the plea offer to Mr. Day for a second decision. And the plea offers were six months apart. The case had progressed since that time. So this was a case that started with 18 defendants. By the time Mr. Day was deciding whether to take the second plea agreement, he was the only defendant left standing in the case. Two others pled around that time. The government had made a Santiago proffer about what it was going to show about the existence of the conspiracy. And, of course, it was 40 days from trial, and as I mentioned before, the court had just denied a continuance that his lawyer said he needed. So matters did stand in a different place, and that's why the government did ask him again if he wanted to plead rather than go to trial. And these lawyers advised him not to? They advised him not to. They gave the same advice they'd given previously, that he had a strong defense, that the government's case was insubstantial, and that he would win at trial. This appeal really isn't about the merits of this Strickland claim. It's really just about whether he gets a hearing to try to carry his burden of establishing that he would have accepted the plea but for the bad advice of the retained counsel and that the court would have accepted the recommendation since it was a nonbinding plea agreement. Yes, Your Honor. That's a pretty significant burden. So he's not home free if he wins a reversal. He's got a tough road to hoe. The government disputes the second prong of Strickland. They argue that he wouldn't have taken this deal anyway. I think the record strongly supports us in this regard because he did plead guilty. He pled guilty just days after rejecting the plea offer, and the only thing that changed during that time is that his counsel changed their advice and said that he was going to be convicted. So I think that's a very strong objective indication that he would have taken the much more favorable plea deal had he not been wrongly advised. But to start with the first part of Your Honor's question, yes, at this point we're just asking for a hearing to resolve that disputed issue of fact. And right now the court cannot deny Mr. Day that hearing unless the record conclusively shows that his allegations about whether he would have taken the plea are false. And this record just comes nowhere close to that, respectfully. What about the second part of the analysis that he would have received, a sentence consistent with the recommendation and the plea agreement? How do you plan to go about establishing that? Sure, Your Honor. So all the district courts ruled on that at this point is just saying because this was a nonbinding plea, he can't show prejudice as a matter of law. But the district court did not include any facts in its analysis indicating that in Mr. Day's particular case, it might not have followed the government's recommendations had those recommendations been in place. Right. Well, that's why I'm asking how you're going to go about establishing that aspect, carrying your burden. Sure. So we think if this case went back to before the district court for resentencing, the district court would be presented with the government's recommendations of what the government evidently thought was fair for Mr. Day to receive in this case. There's also the fact that he did not, you know, he didn't put the government to its proof at trial. This wasn't a situation where he took a gamble and then made everybody go through a trial and then is now bringing a claim saying he would have pled. I think the calculate, first of all, no matter what, the plea agreement gave him three levels for acceptance of responsibility. He only got two because he didn't take the plea agreement. But I think it's at least reasonably probable that he would have gotten an extra level for acceptance of responsibility. So there's really no hearing that's necessary on that aspect of the Strickland inquiry in this context? It's just a matter of argument? I think that's right with respect to the question of whether his sentence, there's a reasonable probability the sentence would have been different. That would be left to the district court, as Leigh Thurley Cooper says, in its discretion to decide what the appropriate sentence is. But I think a hearing, unless the government no longer disputes whether or not he would have taken a deal, a hearing is necessary to resolve that disputed issue. The other side sort of brings this up, which may not mean much, but they're saying this would be a bad precedent and they would encourage people to go out and hire crummy lawyers. I don't want to be facetious about it, and therefore then bring that up in order to turn this around. What's your response to that? I think that's just highly improbable, Your Honor, and not something this court needs to worry about, frankly, when deciding this case. So for their sandbagging argument to work, first of all, it can't just be the case that there are reasonable arguments to be made on both sides of pleading or not pleading. The advice not to plead has to be objectively unreasonable, just completely below a minimum standard of competence. Then the defendant would have to find an attorney who's either willing to manufacture this claim of ineffective assistance, which the Supreme Court has said in the Kimmelman v. Morgan case that we don't presume defense attorneys are unethical and unprofessional in that regard, same with the Day case that we cite. There are exceptions to that. Surely, Your Honor, but— I got reversed as a state trial judge on that precise issue on a Strickland claim where there was grossly unethical behavior by the retained defense counsel after the state public defender secured a very good plea offer. Well, I hope that's the exception that breaks the rule, Your Honor. It does happen. I mean, the incentives are perverse, but there's not a lot we can do about it. Exactly, Your Honor, and if I could finish the question. So either we have to find an attorney who's willing to manufacture that claim or just the defendant has to go out and somehow find a completely incompetent attorney, and then for the plan to work, they'd have to go to trial with that incompetent attorney, which doesn't make a lot of sense. Is that what you're describing, these attorneys as just totally incompetent? We believe, and the government has outright conceded at this point, that Schwartz and Criss performed beneath the minimum standards for defense attorneys in this case. Yes, Your Honor. I see that I'm over my time. If I could reserve the rest. We ask that this court vacate and remand the case for further proceedings. Thank you. Thank you. Good morning. May it please the Court. Laura Langenegger for the United States. I'd like to start with a small point of clarification. It's important to understand that Day's appointed public defender advised him to take the government's offer, but instead of doing that, he instructed her to counteroffer. And then he went out and hired a new set of attorneys, as is his constitutional right to do so, she was his own counsel, who would take his case to trial. That was Day's choice. And if that isn't conclusive evidence that he wouldn't have taken this plea offer, the fact that he, in fact, didn't take it, I'm not sure what is. And that's why the government believes that a hearing isn't warranted in this matter. With respect to policy, I want to raise another issue that I think is important. Wouldn't a hearing establish that, though? I'm sorry, Your Honor? Wouldn't a hearing establish your contention? That he wouldn't have taken the plea offer? It's not necessary in this case, Your Honor, because we have the unusual instance where the defendant actually didn't accept the plea. And the fact that he didn't accept it in September is strong evidence that he wouldn't have accepted it in December, because at that point, nothing had changed. And that brings up an important issue about this case. On December 16th, Day's new attorneys appeared in his case, and on December 17th, the next day, the prosecutor sent the plea offer that was still on the table over to them. So it wasn't a new offer in any sense of the word. The terms were exactly the same. The prosecutor was simply doing what any attorney would do when she saw that new attorneys had appeared in the case, is reach out to them and extend the offer that was on the table. Well, what's changed is now he's getting bad advice from the new defense team. Perhaps so, Your Honor, but he was still aware of his previous attorney's advice, and we know that because of what his father said in his affidavit in the record. Right, but the argument that you're making is basically that the good advice of the federal defender initially on the case cancels out the later bad advice of the incompetent retained counsel. Certainly, that's the way the Sixth and the Ninth Circuits would see it, Your Honor, as far as we see from Logan and Santoso and their progeny. I think another way to read this same case, though, is with a straightforward application of Lee. The record here conclusively establishes he wouldn't have taken the plea, and we know that because he didn't take it when given a previous opportunity to do so. His father, I assume, intervened and didn't want him to plead guilty, I guess, and that's when he intervened and brought his personal attorney in who didn't know anything about criminal law and then brought in Mr. Crist who said he did, I guess. It just trails from there, and that's the case we have. It's unfortunate. Foster apparently was a very competent federal defender, and that's the advice he had. Eventually, the one they were trying to cling on to at some point, which didn't work out. That's right, Your Honor. This is a case where the defendant made his own choices. He chose not only to decline the plea offer but to get rid of his public defender and get a set of attorneys who would take his case to trial as his constitutional right to do. So just to conclude, we would request, if there are no further questions for me, that the court affirm the ruling of the district court. Thank you. You have about a minute. Thank you, Your Honor.  The government started by saying that there is conclusive evidence in this record that Mr. Day wouldn't have accepted the plea, but their conclusive evidence was the fact that he made a counteroffer. Especially at this stage in the case where we're not deciding who is the slightly better story, but we have to say whether the record conclusively shows that his allegations are false, the fact that he made a reasonable counteroffer shows that he was negotiating in good faith and that he was very seriously considering taking the offer. He also made a proffer during that time, showing that he was open to cooperating. The government also said that the – well, after saying that Day had already rejected the offer before me with Schwartz and Criss, that the offer was still on the table in December, Day alleges that he rejected the offer earlier in the summer after meeting with Schwartz and Criss. So the second offer in December was a new decision point. The government was asking him whether or not he wanted to take it, and at that point he was entitled to effective assistance in making that new decision. If there are no further questions, I ask that you vacate and remand. Thank you very much. Thank you, counsel. Thanks to both counsel on the cases taken under advisement.